# DEVINE SEAFOOD, INC. ET AL. v. ATTORNEY GENERAL OF MARYLAND

[No. 808, September Term, 1976.]

*Decided October 11, 1977.*

The cause was argued before GILBERT, C. J., and MOYLAN and LISS, JJ.

* Note: *Certiorari* granted, Court of Appeals of Maryland, December 23, 1977.

*Gary A. Graham,* with whom were *Andrew J. Graham* and *Graham & Graham* on the brief, for appellants.

*Jack J. Shapiro, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Jon F. Oster, Deputy Attorney General,* and *John N. Ruth, Assistant Attorney General,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellants are Devine Seafood, Inc., an incorporated retail fish stall which prior to the action in this case had been located in the Lexington Market in Baltimore, Maryland; Leo Devine, the sole owner and President of the aforesaid corporation; John Byus, the manager of the fish stall and a member of the corporation's Board of Directors; and Tom Byus, a brother of John Byus and an employee of the corporation (hereafter referred to, where appropriate, simply as Devine Seafood). Judge Harry A. Cole, in the Circuit Court for Baltimore City, found the appellants to have been in violation of the Maryland Consumer Protection Act. On July 16, 1976, he signed an order granting the relief prayed by Francis B. Burch, the Attorney General of Maryland, the appellee (hereinafter referred to as the Attorney General). The order provided that each of the appellants would be permanently enjoined from engaging in the overcharging policy as set out in the court's oral opinion; that each of the appellants would be assessed civil fines totaling $38,500; and that the question of whether the corporate charter be forfeited and a receiver of its assets be appointed be reserved provided that the appellants pay the fines levied within fifteen days of the date of the order.

The appellants have appealed from that order, raising four contentions:

1) That the Circuit Court of Baltimore City did not have jurisdiction over the subject matter of the action brought by the Attorney General because a necessary precedent to the filing of such action — an effort by the Division of Consumer Protection to obtain voluntary or involuntary compliance — had not been taken;

2) That the Maryland Consumer Protection Act is unconstitutional because "its enforcement policy lacks such adequate safeguards and ascertainable standards that it promotes an arbitrary and discriminatory policy of enforcement through the selection of alternate modes of enforcement"; and

3) That the evidence was not legally sufficient to sustain the finding of the court that the appellants had violated the Maryland Consumer Protection Act; and

4) That the court erred in imposing excessive fines.

We will deal initially with the legal sufficiency of the evidence. The specific finding of the Circuit Court was that Devine Seafood had engaged in a deliberate scheme to defraud the consuming public by a systematic pattern of overcharging on fresh, whole fish purchased at the stall in the Lexington Market. We hold that the evidence was legally sufficient to sustain this finding.

Three former employees of Devine Seafood testified as to the fraudulent practice. Richard Hergenroeder, a third-year civil engineering student at Drexel University, testified that he worked for Devine Seafood from May, 1974, through August, 1974. His principal duty was to wait on customers. He worked five full days a week, waiting on approximately twenty-five customers each day. Most of the time, he sold fresh, whole fish. He testified that in weighing and charging for the fresh, whole fish, he calculated a price per pound 10¢ higher than the price indicated on the price markers placed on the fish in public view on the counter. He followed this procedure as a result of instructions he received from John Byus, the manager of the stall, and Tom Byus, an employee of the stall. His instructions included demonstrations by both men on how to weigh fish and charge customers. After the first several weeks on the job, Hergenroeder engaged in this overcharging on between 80 and 90% of the occasions he sold fresh, whole fish.

Richard Hawks testified that he worked for Devine Seafood for approximately one month during the period of February, 1975. He testified that he charged "an inflated price" of 10¢ a pound over the price which the marker

indicated to the public. He received his instructions in this regard from Leo Devine and from John Byus. It was Mr. Hawks who first brought the practice to the attention of the Consumer Protection Bureau.

Yet a third employee, Ernest Russell, testified that he worked for Devine Seafood for a five to six month period in 1974. He testified that with respect to the sale of fresh, whole fish, he charged a price that appeared on the side of the price markers not visible to the public, which price was 10 to 15¢ higher than the price indicated on the side of the marker visible to the customers. He testified that he received his instructions on overcharging from Leo Devine and John Byus.

One of the assertions made by the appellants herein is that the proceeding was at least quasi-criminal and that there was no corroboration of the testimony of these three participants in the fraudulent scheme, who were thereby accomplices. Although we do not view this action under the Consumer Protection Act as criminal in nature, so as to require corroboration of accomplice testimony, it is unnecessary to come to grips with that legal contention for the reason that there was ample non-accomplice corroboration even if the testimony of the three employees required corroboration. One of the appellants' witnesses, Vincent Maurice Jones, testified that he worked for Devine Seafood during the month of February, 1975. He testified that he always charged the customer the price indicated on the rear of the price marker and not that shown on the front of the marker. Six price markers were introduced into evidence, which markers had been used at the stall during the month of February, 1975. All showed different prices on the two sides of the markers, one price always being at least 10¢ higher than the price on the obverse side of the same marker.

By way of additional corroboration, even assuming such corroboration to be required, the Consumer Protection Bureau sent its investigators to make fish purchases on several occasions during the months of February and March, 1975. Two of those purchases were made before the

appellants had been put on notice that an investigation was under way. The salesperson on both of those occasions was Tom Byus. On both occasions — on February 19 and again on February 20 — there were overcharges, which overcharging is not disputed by the appellants.

Judge Cole made the following findings of fact:

"It is indelibly clear to this Court that Leo Devine set upon a course to defraud the persons who patronized his place of business by deliberately posting one price for raw fish for their view and concealing another price for the view of his employees to be charged these customers so as to reap an unlawful profit. This scheme was instituted at least when Richard Hergenroeder was an employee, which was late May, 1974, and continued as a practice of corporate business until discovered by the Consumer Protection Office in February; the practice continued I should say up to February 20, 1975."

"The proof in this case is overwhelming insofar as this Court is concerned. The Court does not believe Mr. Devine nor his witnesses, but believes Mr. Devine, John Byus and Tom Byus instructed their employees to carry out this unlawful practice."

"Based on the testimony, the Court finds as a fact that Devine Seafoods, Inc., Leo Devine, John Byus and Tom Byus engaged in the unlawful practice prohibited by the Statute in question from at least July the 1st, 1974 to and through February 20, 1975 on each and every working day therein, or a total of 219 days. The Court finds further that there were numerous violations of the Statute on each of these days, but at least one on each of these days. This Court finds it reasonable to infer that these Defendants have together and individually violated the Statute at least one hundred times."

It is clear to us that the Legislature intended the penalties imposed under the Consumer Protection Act to be in the context of civil proceedings and that the appropriate standard of proof is, therefore, a preponderance of the evidence.[1] We hold that Judge Cole was not clearly erroneous in finding the facts as he did.

The appellants' second contention can be disposed of summarily. With respect to the constitutionality of the Consumer Protection Act, the short answer is that the constitutionality was not questioned at the trial stage and will not, therefore, be considered on appeal. Maryland Rule 1085. *Woodell v. State,* 2 Md. App. 433, 234 A. 2d 890; *Vuitch v. State,* 10 Md. App. 389, 271 A. 2d 371.

The appellants' third contention is that it is mandatory for the Consumer Protection Division to hold public "cease and desist" order hearings and to attempt to conciliate the matter as provided by Article 83, §§ 20G and 20F, before the Circuit Court has jurisdiction to grant injunctive relief and impose the statutory civil penalties provided by Article 83, §§ 20H and 22. At the time the Attorney General filed the Bill of Complaint in this case on June 19, 1975, the Consumer Protection Act was codified as Article 83, §§ 19-27A.[2] The trial court found all of the violations in this case to have occurred during the period of July 1, 1974, through February 20, 1975. The case, therefore, is governed by the provisions of the Consumer Protection Act as they were codified in Article 83, §§ 19-27A. See Article 1, § 3, *Annotated Code of Maryland.*

---

1. The issue as to the standard of proof is really academic in view of Judge Cole's words, "It is indelibly clear to this Court . . ." and "The proof in this case is overwhelming." We would have no difficulty in concluding from those words that Judge Cole had been convinced by a "clear and convincing" standard and even by a "beyond a reasonable doubt" standard, were those the appropriate measures of proof to be applied.

    See, moreover, *Helvering v. Mitchell,* 303 U. S. 391, 58 S. Ct. 630, 82 L. Ed. 917 (1938). And see *Prince George's County v. Blue Bird Cab Co., Inc.,* 263 Md. 655, 284 A. 2d 203, and *Gatewood v. State,* 264 Md. 301, 285 A. 2d 623.

2. The Consumer Protection Act was revised as of July 1, 1975, and is now codified as Title 13 of the Commercial Law Article, *Annotated Code of Maryland.*

The appellants predicate their contention that an effort at conciliation is a necessary condition precedent to the seeking of injunctive relief upon the language of Article 83, § 20F, which provides, in pertinent part:

"(b) Upon the filing of a complaint, the division shall make an investigation as he deems appropriate to ascertain facts and issues. In making these investigations and determinations he may use the authority granted to the Department in § 20C of this subheading. . . . If the division determines that there are reasonable grounds to believe a violation has occurred, it shall attempt to conciliate the matter by methods of initial conference and persuasion with all interested parties and their representatives chosen to assist them."

The appellants predicate their contention that a "cease and desist" order hearing is a necessary condition precedent to the seeking of injunctive relief upon the language of § 20G, which provides, in pertinent part:

"(a) With respect to a matter which it believes may involve a violation of these regulations the division, may hold a public hearing to determine if a violation of these regulations has been committed. The division shall serve upon the person complained against a statement of charges and shall serve upon all parties of record a notice of the time and place of hearing. The hearing shall be open to the public and shall be held not less than ten days after service of the statement of charges."

Section 20G, by its very terms, vests discretion in the Consumer Protection Division and is not mandatory. Nor do we have any difficulty in concluding that § 20F is not a mandatory precondition to seeking injunctive relief. The scheme contemplated by § 20F, in its entirety, is one wherein a consumer files a complaint in writing. The Consumer Protection Division then makes an effort, where appropriate, to seat the complaining consumer and the

alleged violator down at a conference table in a commendable effort to reconcile the differences between them and to reach an appropriate settlement and to see, in the course of that effort, that any unlawful trade practices are discontinued.

In the instant case, it was not a chagrined consumer who brought the alleged violations on the part of Devine Seafood to the attention of the Consumer Protection Division. Involved rather was a deliberately fraudulent pattern of long-standing duration to defraud the consuming public at large. The consumers who had been victimized were numerous but unknown. If the Consumer Protection Act meant no more than that the erring party in a case such as this would have to agree, by way of conciliation, to "sin no more" in order to escape any sanctions would be to emasculate the Act radically. We hold that the more severe sanctions contemplated by § 20H and § 22 are available to the Attorney General when, in the exercise of his discretion, such stronger measures in the courtroom are called for. Section 20H provides:

"A merchant who is found to have committed a violation of any of the provisions of this subheading relating to unlawful trade practices shall be liable for the payment to the State of a civil penalty, recoverable in a civil action, in the sum of not more than $300 for each violation. In the event of subsequent violations for the same unfair trade practice, the merchant is liable to the State in the amount of $500 as a civil penalty for each subsequent violation."

The entire scheme of the Consumer Protection Act contemplates three different methods through which complaints may arise and sanctions may be imposed. An aggrieved consumer may, on his own, bring a complaint to the attention of the Consumer Protection Division. That consumer, however, is not thereby precluded from seeking

other appropriate relief, for which § 20F (g) provides explicitly:

"(g) Nothing in this section prevents any consumer from exercising any right or seeking any remedy to which he might otherwise be entitled or from filing any complaint with any other agency, or court of law or equity."

Secondly, and somewhat more broadly, the Consumer Protection Division itself may be the moving party. It may, of course, act, by way of attempted conciliation or otherwise in response to the complaints brought in writing by individual citizen-consumers. It may, moreover, act upon its own initiative, from whatever stimulus, to investigate individual instances or broader patterns of unfair or deceptive practices. Its techniques and procedures are those appropriate to an administrative agency and are less formal than those which apply in the courtroom setting. Nothing, however, prevents the Consumer Protection Division from "bucking" a suspected violation up to a higher plateau of sanction-seeking, where such escalation seems appropriate. Section 20C (6) provides that the Consumer Protection Division, even while making its own investigation, has the right to:

"Report to the appropriate law-enforcement officers any information concerning violations of any consumer protection law."

Among the appropriate law enforcement officers to whom information concerning violations may be reported is the Attorney General. In addition to seeking the imposition of civil penalties contemplated by § 20H, the Attorney General may, *inter alia*, move for an injunction under § 22, which provides, in pertinent part:

"If a person has engaged in or is engaging in any practice declared unlawful by this subtitle, the Attorney General may obtain an injunction to prohibit the person from continuing the practice or

any acts in furtherance of the practice. Notice of the general relief sought shall be served at least seven days prior to the institution of the action for an injunction. The court may pass any order or judgment necessary to: (1) prevent the use or employment by a person of any prohibited practice; (2) restore to a person in interest any moneys or property, real or personal acquired by means of any practice declared unlawful in this subtitle; or (3) appoint a receiver in cases of willful violation of this subtitle."

Although by no means limited to such situations, action in the courts by the Attorney General is particularly appropriate where the violations are of a higher order, quantitatively and qualitatively, and most especially where the violations are "willful." There is nothing in the language of the Act which precludes the Attorney General from seeking the sanctions available in the courtroom unless and until the lesser administrative remedies have first been tried. We can read no such intent in the minds of the Legislature and find, therefore, no impediment to the action taken by the Attorney General in this case. Indeed, the finding of the trial judge places the imprimatur of the courtroom upon the appropriateness of the bringing of the action to the courtroom. Our holding in this regard is invigorated by the clear command of the Legislature in § 20A:

"This subheading shall be liberally construed and applied to promote its [the Consumer Protection Act's] purpose and policies."

The appellants' final contention is that the civil fines imposed were excessive. Judge Cole found that at least one violation per day occurred over a period of 100 days. He imposed upon the Devine Seafood Corporation itself a fine of $100 for each violation, for a total of $10,000. He imposed upon Leo Devine, the sole owner and President of the corporation, a fine of $250 per violation, for a total of $25,000. He imposed upon John Byus, the manager of the

fish stall and a member of the corporation's Board of Directors, a fine of $25 per violation, for a total of $2,500. He imposed upon Tom Byus a fine of $10 per violation, for a total of $1,000. The contention of the appellants is that the language of § 20H limits the civil fine to a maximum of $300 for each violation. The appellants argue that all of the various individuals or corporate identities of Devine Seafood should be considered as a unit for purposes of this $300 per violation limit and that the combination of defendants received actual fines, in the aggregate, of $380 per violation. They argue that the Attorney General could not proceed against both the corporation and its employees, or at least could not have fines assessed against both.

Section 20H reads, in pertinent part:

> "A merchant who is found to have committed a violation of any of the provisions of this subheading relating to unlawful trade practices shall be liable for the payment to the State of a civil penalty, recoverable in a civil action, in the sum of not more than $300 for each violation."

The term merchant is defined under § 20 (h) as:

> "any person who offers or makes available to consumers, either directly or' indirectly, merchandise, goods, services or credit."

The term person is defined under § 20 (e) as:

> "an individual proprietor, partnership, corporation, firm, cooperative, association or any other group of individuals, however organized."

The short answer to this contention is that the question of the applicability of the civil penalty provisions of the Consumer Protection Act to "employees" of the corporation was never raised at the trial below. This failure to raise the issue was notwithstanding the fact that all of the individual appellants in this case were identified in the original pleadings as defendants to the action with specific prayers that the civil penalties be assessed against them. The trial

judge conducted extensive questioning on the issue of civil penalties. Under the circumstances, the failure to raise the issue at the trial level which is now being urged before us operates to preclude appellate review. Maryland Rule 1085.

*Judgments affirmed; costs to be paid by appellants.*