Argued and submitted June 2,
reversed and remanded July 23,
petition for rehearing denied September 3, 1980

STATE ex rel REDDEN,
*Petitioner,*

*v.*

DISCOUNT FABRICS, INC.,
*Respondent.*

(NO. A7703-03602, CA 14380, SC 26874)

615 P2d 1034

Erik G. Sten, Assistant Attorney General, Portland, argued the cause for petitioner. With him on the briefs were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

R. Alan Wight, Portland, argued the cause for respondent. With him on the brief was Miller, Anderson, Nash, Yerke & Wiener, Portland.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Linde and Peterson, Justices.

TONGUE, J.

## TONGUE, J.

This case involves a civil suit brought by the state Attorney General against defendant, Discount Fabrics, Inc., for alleged violations of Oregon's Unlawful Trade Practices Act (UTPA), ORS 646.605 et seq. The suit was tried in circuit court before a jury which returned a special verdict for defendant. Plaintiff appealed from the resulting decree.

Plaintiff's sole assignment of error is that the trial court erred in its instruction to the jury that evidence of alleged "wilful" conduct by the defendant in violation of the Oregon Unlawful Trade Practices Act "must be clear and convincing, as distinguished from a mere preponderance of the evidence." The Court of Appeals affirmed without opinion. 44 Or App 295, 605 P2d 760 (1980).

Defendant operates a chain of 61 retail fabric stores covering six western states and British Columbia. In October of 1976 an investigator for the Consumer Protection Division of the Oregon Department of Justice purchased twelve samples of various fabrics from three of defendant's stores located in the Portland metropolitan area. Seven of these fabrics were labeled as containing 100 percent wool; one was labeled 80 percent wool; and four were labeled "wool blend." The actual wool content varied between 9 percent and 83 percent.[1]

---

[1]

| Store Location | Label on Fabric Board | Actual Wool Content |
|---|---|---|
| (1) Lake Oswego | 80% Wool | 16% |
| (2) Lake Oswego | Wool Blend | 15% |
| (3) Lake Oswego | 100% Wool | 83% |
| (4) Lake Oswego | 100% Wool | 17% |
| (5) Lake Oswego | 100% Wool | 29% |
| (6) Sandy Blvd. (Portland) | 100% Wool | 29% |
| (7) Sandy Blvd. | Wool Blend | 9% |
| (8) Sandy Blvd. | Wool Blend | 52% |

The state filed suit in Multnomah County Circuit Court, alleging twelve violations of the Unlawful Trade Practices Act in that "the false and incomplete descriptions of the boards of fabric offered for sale and the practice of misrepresentations by defendant were in violation of ORS 646.608(1)(e) and (g)."[2] By its first cause of suit the state sought a decree ordering defendant to pay a civil penalty of $25,000 for each of the twelve violations.[3] By its second cause of suit the state sought a decree enjoining defendant from further violations of the statute, ordering defendant to make restitution to consumers who had purchased mislabeled fabrics, and an award of reasonable attorney fees.[4]

| | | |
|---|---|---|
| (9) Gateway Shopping Center | 100% Wool | 17% |
| (10) Gateway | 100% Wool | 29% |
| (11) Gateway | 100% Wool | 20% |
| (12) Gateway | Wool Blend | 31% |

[2] ORS 646.608(1) states in part:

"A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person:

"* * * * *

"(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that he does not have;

"* * * * *

"(g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if they are of another; * * *."

[3] ORS 646.642(3) states:

"In any suit brought under ORS 646.632, if the court finds that a person is wilfully using or has wilfully used a method, act or practice declared unlawful by ORS 646.606 or 646.608, the prosecuting attorney, upon petition to the court, may recover, on behalf of the state, a civil penalty to be set by the court of not exceeding $25,000 per violation."

[4] ORS 646.632(1) provides:

"Whenever the prosecuting attorney has probable cause to believe that a person is engaging in, has engaged in, or is about to engage in an

A jury was impaneled to hear the state's first cause of suit: the question of defendant's liability for a civil penalty.[5] ORS 646.642(3) provides that the state may recover such a civil penalty upon a finding that "a person is *wilfully* using or has *wilfully* used a method, act or practice declared unlawful by ORS 646.607 or 646.608 * * *." (Emphasis added). ORS 646.605(9) provides that "a wilful violation occurs when the person committing the violation *knew or should have known* that his conduct was a violation." (Emphasis added)

At trial defendant did not contest the evidence offered by the state that identified the actual percentage of wool in the twelve pieces of fabric purchased by the Consumer Protection Division inspector. Instead, nearly all of the evidence presented by the state and by defendant went to the question whether defendant "knew or should have known" that the labels on the fabrics were incorrect.

It appears from the record that the manufacture of the fabrics involved in this case involves various steps and often several different companies.

---

unlawful trade practice, he may bring suit in the name of the State of Oregon in the appropriate court to restrain such person from engaging in the alleged unlawful trade practice."

ORS 646.632(8) provides in part:

"The court may award reasonable attorney fees to the prevailing party in a suit brought under this section. * * *"

ORS 646.636 provides:

"The court may make such additional orders or judgments as may be necessary to restore to any person in interest any money or property, real or personal, of which he was deprived by means of any practice declared to be unlawful in ORS 646.607 or 646.608, or as may be necessary to insure cessation of unlawful trade practices."

[5] The complaint in this case was designated as a "suit in equity." Defendant demanded a jury trial as a matter of constitutional right on the first cause of suit, which sought to impose a civil penalty. The state, as plaintiff, without conceding defendant's right to a jury trial, waived its right to have the cause of suit tried before the court without a jury. That cause of suit was then tried before a jury in the same manner as in an action at law, and the court then adopted the verdict of the jury as its finding of fact on that cause of suit.

Fabrics begin as "grey goods," followed by dyeing and finishing. The manufacturer of the "grey goods" is required by federal law (15 USC 68c) to identify by a label or tag the percentage of wool content.

Distributors of finished goods will "guarantee" that the fabrics they sell are as labeled. Defendant normally requested "guarantees" from its suppliers. In purchasing the fabrics involved in this case, however, defendant had not requested any such "guarantees."

In September 1976, June Bert, the owner of another fabric shop in Lake Oswego, went to defendant's Lake Owego store and purchased three samples of fabric labeled 100 percent wool. She ran a "burn test" and a "bleach test" on these fabrics and determined that they were about 50 percent wool. She then notified the Consumer Protection Division. In October one of its investigators, accompanied by Ms. Bert, went to defendant's Lake Oswego store. Ms. Bert selected by "feel" six fabrics that she thought contained less wool than was indicated on the label. The investigator then purchased a sample of each.

The investigator also went to two of defendant's other stores in the Portland area, unaccompanied by Ms. Bert. At those stores he purchased additional samples, some duplicates of those purchased at the Lake Oswego store, others that by "feel" he thought might be mislabeled.

The state offered testimony by other witnesses that in the case of at least some of the fabrics in question, it was fairly easy to tell by "feel" that they were not 100% wool and, further, that this could be determined by burning a sample (burning wool emits a strong odor) or by placing a sample in bleach (the wool fibers dissolve, leaving the man-made fibers).

Defendant offered the testimony of its employees to the effect that defendant handles a large volume of fabric; that it had relied upon labels fur-

nished by reliable manufacturers and, further, that determining wool content by "feel" is very difficult. (At trial Ms. Bert was asked on cross-examination by the defense to identify several samples of wool cloth as being either 100%wool or wool blends. She demonstrated great difficulty in doing so.)

Two questions were submitted to the jury. First, as to each of the twelve fabrics, whether a misrepresentation had occurred. Second, if any misrepresentation had occurred, did defendant know or should it have known of such misrepresentation? As to the first question, the court instructed the jury that the state's burden of proof was "by a preponderance of the evidence." As to the second question, however, the court instructed the jury:

"On the second count, the instruction is a little bit different because it alleged wilful conduct on behalf of the defendant. And the evidence in that case must be clear and convincing, as distinguished from a mere preponderance of the evidence."

By a special verdict in response to these questions, the jury found that misrepresentations had been made by the defendant in selling eight of the twelve fabrics but that none of those eight misrepresentations had been "wilful," (i.e. defendant did not know nor should it have known of such misrepresentations).

The court then entered its Findings of Facts and Conclusions of Law incorporating the verdict in favor of the defendant on the first cause of suit and dismissing the second cause of suit for an injunction, restitution and attorney fees.

As previously stated, the state appealed to the Court of Appeals, urging a single assignment of error:

"The trial court erred by instructing the jury that plaintiff was required to establish its case by a clear and convincing burden."

In response, defendant contends that the instruction was proper and, if it was not proper, that the error was not prejudicial.

## I. *The proper standard or degree of proof.*

ORS 17.250(5) provides:

"* * * that in civil cases the affirmation of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the *preponderance of evidence;* that in criminal cases guilt shall be established beyond a reasonable doubt; * * *." (Emphasis added)

Oregon's Unlawful Trade Practices Act (UTPA) is a comprehensive statute for the protection of consumers and provides for both public and private enforcement of its provisions.[6] In both instances it is clear that the legislature intended that such enforcement be obtained through the use of civil remedies rather than criminal sanctions.[7]

The act is silent, however, with respect to the degree of proof required in such proceedings. Thus, the question is presented whether the "preponderance of evidence" standard as provided in ORS 17.250(5) should apply in such proceedings, particularly in deciding the question whether defendant's conduct was "wilful," or whether a higher standard or degree of proof should be required in deciding that question in such cases.

In *Cook v. Michael,* 214 Or 513, 330 P2d 1026 (1958), this court held (at 525) that:

---

[6] The Attorney General or county District Attorneys may make an "investigative demand" to determine whether any violation has occurred. ORS 646.618. They may also bring suit to enjoin further violations, ORS 646.632, to seek restitution for persons deprived of money or property, ORS 646.636, and to seek civil penalties for wilful violations of an injunction, voluntary compliance agreement, or the provisions of ORS 646.607 and 646.608. ORS 646.642.

Private parties may initiate suit under ORS 646.638 seeking actual damages or $200, whichever is greater, and punitive damages.

[7] ORS 646.642 provides for a "civil penalty," rather than a "fine." ORS 646.632 provides that state prosecuting attorneys may bring suit in the name of the state to seek an injunction. ORS 646.636 provides that the court may "make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property * * *."

> "Our treatment of ORS 17.250(5) should not be taken to mean that in civil cases an instruction in terms of a preponderance of the evidence is the only permissible charge. When an issue must be proved by clear and convincing evidence an instruction so stating does not run counter to ORS 17.250(5). Thus where the issue is *fraud,* a higher degree of proof is necessary." (Emphasis added)

And, further, (at 527):

> "In ordinary civil cases the degree of proof required is a preponderance of the evidence; in some types of cases, such as those involving the issue of *fraud,* many courts require 'clear and convincing' evidence; * * *." (Emphasis added)

Thus, while the "preponderance of evidence" standard is the rule in most civil cases, an exception to that standard has been required in civil cases based upon common law fraud. *See, e.g., Barkins v. The Stuyvesant Ins. Co.,* 255 Or 222, 224, 465 P2d 696 (1970).

Defendant contends that when, in proceedings under the UTPA, the remedy sought requires proof of "wilfulness," the degree of proof required must be "clear and convincing" because had "these same allegations been made by a purchaser of goods without reference to the Oregon statute, the case would have been one for fraud and deceit under the common law." Thus, according to defendant, when the legislature codifies common law fraud, but is silent as to the degree of proof required, the assumption should be that the legislature intended that the common law rule requiring a "clear and convincing" degree of proof should apply. We disagree.

In *Wolverton v. Stanwood,* 278 Or 341, 563 P2d 1203, *reh. den.* 278 Or 709, 565 P2d 755 (1977), this court said (at 713):

> "The elements of common law fraud are distinct and separate from the elements of a cause of action under the Unlawful Trade Practices Act, and a violation of the Act is more easily shown."

The elements of common law fraud, as stated by this court in *Rice v. McAlister,* 268 Or 125, 128, 519 P2d 1263 (1974), are:

"* * * (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the bearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury."

A review of the UTPA reveals that not all of these elements are required in order to recover under the act. For example, the element of reliance is notably different. In *Sanders v. Francis,* 277 Or 593, 598-99, 561 P2d 1003 (1977), this court considered whether reliance was a necessary element to a private action under ORS 646.638(1). That section requires that a private party has suffered an ascertainable loss "as a *result of* wilful use or employment by another person of a method or practice declared unlawful by ORS 646.608* * *," before such party may bring a UTPA suit. This court determined that whether reliance was a necessary element depended upon the type of violation alleged and that reliance was not required in nondisclosure cases. Thus, reliance may not be an element of a private cause of suit under ORS 646.638(1) because of the requirement that the loss be the "result of" wilful conduct. In any event, no such requirement that a loss be the "result" of wilful conduct exists when, as in this case, suit is brought by the state under ORS 646.632 and when a civil penalty is sought under ORS 646.642(3).

In addition, the element of scienter as required in an action for common law fraud is not required by the UTPA. In *Horner v. Wagy,* 173 Or 441, 146 P2d 92 (1944), this court considered whether it was error to instruct a jury that representations could constitute fraud "even though the defendant did not know whether such representations were true or false." This court stated (at 459):

> "This court is committed to the doctrine that scienter, as an element of actionable fraud, is imputable only when a statement is attended by *conscious ignorance of, or reckless indifference to,* its truth or falsity on the part of the one making it; (citation omitted). The language of the instruction which we have quoted could have been taken by the jury to mean that a finding of fraud was authorized even though the misrepresentations were made negligently, without knowing whether they were true or false."

This requirement that the statement be "attended by conscious ignorance of, or reckless indifference to, its truth or falsity" was further explained in *Amort v. Tupper,* 204 Or 279, 282 P2d 660 (1955) at 287:

> "In other words, a definite statement of a material fact made by a party who does not know the statement to be true, and has 'no reasonable grounds for believing it to be true, will, if false, have the same legal effect as a statement of what the party positively knows to be untrue.' 3 Pomeroy's Equity Jurisprudence, 5 ed, 479, § 884a."

*See also Bausch v. Myers,* 273 Or 376, 379, 541 P2d 817 (1975).

By contrast, ORS 646.642(3) permits the imposition of a civil penalty if defendant "knew or should have known that his conduct was a violation." ORS 646.605(9).

Thus, under the terms of that statute a defendant is liable for misrepresentations made negligently, without evidence that it was attended by either conscious ignorance or reckless indifference to its truth or falsity, whereas evidence that a misrepresentation was made negligently is insufficient in an action for common law fraud. In other words, the term "wilful," as defined by ORS 646.605(9), requires no more than proof of ordinary negligence by a defendant in not knowing, when it should have known, that a representation made by him was not true.

■     In a cause of action for ordinary negligence
the degree or standard of proof required is a "prepon-
derance of the evidence." In our opinion, the same
degree or standard of proof is required in a proceeding
under the UTPA in view of the provisions of ORS
646.605(9), and we decline to extend to such proceed-
ings the more rigorous degree or standard of proof
required in an action for common law fraud.[8]

■     Defendant also contends that because the
statute authorizes the state to seek a severe "civil
penalty" ($25,000 per violation per ORS 646.642(3)),
this suit cannot be characterized as a "civil suit," but
rather is in the nature of a criminal prosecution,
requiring that the state prove its case beyond a reason-
able doubt. In support of this contention defendant
relies on *Brown v. Multnomah County Dist. Ct.,* 280 Or
95, 570 P2d 52 (1977), in which this court held that
even though the legislature sought to "decriminalize"
the first offense of driving a motor vehicle under the
influence of intoxicants (DUII), that offense and the
means of enforcement and punishment retained too
many penal characteristics not to be classified as a
"criminal prosecution."

Defendant's reliance on *Brown* is misplaced.
In *Brown* this court considered several factors other
than the severity of the fine, including

"* * * the secondary sanctions in case of nonpay-
ment, the relationship of DUII to other major traffic
offenses, the evident legislative desire to emphasize
the seriousness of this offense while facilitating its
punishment, and the retention of criminal law en-
forcement procedures * * *." 280 Or at 110.

---

[8] We are also cognizant of the fact that the legislative history of the
UTLA supports the view that it is to be interpreted liberally as a protection
to consumers. *Denson v. Ron Tonkin Gran Turismo, Inc.,* 279 Or 85, 90, n. 4,
566 P2d 1177 (1977).

In addition, we note that two other jurisdictions have interpreted their
consumer protection acts to permit the imposition of penalties after proof of
violations by a preponderance of the evidence. *See Hyland v. Aquarian Age
2000, Inc.,* 148 N.J. Super 186, 372 A2d 370, 372 (1977); *Devine Seafood,
Inc. v. Attorney Gen. of Md.,* 37 Md App 439, 377 A2d 1194, 1197 (1977).

Most of these factors are not present in actions brought under the UTPA. This court also noted in *Brown* that the legislature retained the criminal classification for a second and subsequent charge of DUII within five years.

In addition, the court in *Brown* specifically noted (at 104) that:

> "It proves little about a $1,000 fine for driving under the influence of intoxicants that much larger civil penalties are levied against business enterprises for violations of various regulations in the course of business. We deal here with fines payable by ordinary individuals for misconduct unrelated to the pursuit of a profitable activity * * *."

The civil penalty applicable in UTPA cases, on the other hand, only applies to activities committed "in the course of the person's business, vocation or occupation * * *." ORS 646.607 and 646.608.[9]

■ For these reasons, we hold that the trial court erred when it instructed the jury that because the second "count" of the complaint in this suit "alleged wilful conduct on behalf of the defendant * * * the evidence on that ("count") must be clear and convincing, as distinguished from a mere preponderance of the evidence."[10]

---

[9] In *Muniz v. Hoffman,* 422 US 454, 95 S Ct 2178, 45 LEd 2d 319 (1975), the U.S. Supreme Court held that a $10,000 fine could be imposed against a labor union by a court for violation of a temporary injunction notwithstanding the Sixth Amendment guarantee of a right to trial by jury in a criminal prosecution.

*See also United States v. J.B. Williams Company, Inc.,* 498 F2d 414, 421 (2d Cir 1974).

[10] In addition, defendant contends that the question of which jury instruction was proper in this case was rendered moot by the trial court's refusal to issue an injunction. An injunction, according to defendant, is a prerequisite to the imposition of a civil penalty. This contention is without merit. ORS 646.642 clearly provides for a civil penalty under any one of three circumstances: a wilful violation of the terms of an injunction, a wilful violation of the provisions of an assurance of voluntary compliance, or a wilful violation of an act or practice declared unlawful by ORS 646.607 or 646.608.

## II. *The prejudicial effect of the trial court's error.*

■      This court has held on several occasions that when error is committed in the trial of civil as well as criminal cases an appellate court will ordinarily presume or "deem" that such error was prejudicial to the party against whom it was committed. *See Elam v. Soares,* 282 Or 93, 102-03, 577 P2d 1336 (1978), and the cases cited therein. As previously stated, the trial court erred in this case in instructing the jury that "* * * the evidence in that case must be clear and convincing as distinguished from a mere preponderance of the evidence."

Defendant cites *Medak v. Hekimian,* 241 Or 38, 404 P2d 203 (1965), as authority for its contention that any such error was harmless rather than prejudicial. In that case this court considered the following instruction:

> "The defendants must establish their affirmative defenses by a preponderance of the evidence, except for the issues of fraud *and estoppel.* These require more than a mere preponderance of the evidence, and must be established by clear, convincing and satisfactory evidence." (Emphasis added)

The court stated (at 46) that although the instruction was incorrect as to estoppel,

> "* * * we doubt that this fine distinction resulted in any prejudice to defendants' rights, and therefore, under ORS 19.125(2), refuse to reverse for this reason."

■      While the conclusion in *Medak* that the error in the instruction in that case was not prejudicial was appropriate under the facts of that case, it does not follow that similar errors in instructions are likewise not prejudicial in all circumstances. Rather, in determining whether an error in an instruction is prejudicial, that error must be viewed in light of the evidence to be considered by the jury in its application of that instruction.

Our review of the record in this case satisfies us that there was sufficient evidence from which the jury could have properly found by a preponderance of the evidence that defendant "wilfully" violated the provisions of ORS 646.608(1)(e) and (g) in that its employees "knew or should have known" that the labels on at least some of the fabrics were incorrect, so as to constitute a violation of the provisions of the statute—in other words, that the defendant was negligent in not knowing that the labels were incorrect.

That evidence included the testimony of the Consumer Protection Division investigator and June Bert that Ms. Bert was able to select, by "feel," four fabrics from defendant's Lake Oswego store that contained less than 100 percent wool, although labeled "100 percent wool." In addition, the investigator was also able to independently select by "feel," without Ms. Bert's assistance, another fabric from one of defendant's other stores that was likewise labeled as containing 100 percent wool when, in fact, the wool content was much lower.[11]

Although the record indicates that during the cross examination of Ms. Bert, the defense was able to demonstrate that she could not consistently identify the wool content of fabrics by "feel," the jury was entitled to find that both she and the investigator were able to identify, by "feel," fabrics that were inaccurately labeled and that were on sale in defendant's stores.

Further, the state offered the testimony of a Mr. Kooning, an officer and director of another firm that dealt in fabrics. He testified that he could tell by "feel" that of the seven fabrics in question that were labeled as 100 percent wool, three were obviously not 100 percent wool. He further testified that in his

---

[11] Other fabrics purchased by the investigator at the other stores were "wool blends" and duplicates of fabrics selected by Ms. Bert at the Lake Oswego store.

business he would not have accepted the manufacturer's label on those fabrics and that he would expect his employees to likewise reject those fabrics and to conduct a "burn test." Mr. Kooning also testified that he preferred to buy from companies that have a continuing guarantee filed with the Federal Trade Commission.

Finally, the state offered the testimony of two adverse witnesses, Bernard Galitzki, defendant's president, and Pearl Galitzki, defendant's executive vice president, who testified that although defendant normally secured guarantees from their suppliers, they had failed to do so in the cases of the fabrics in question.

■ In view of this evidence, from which the jury could have properly found by a preponderance of the evidence, if it believed that testimony, that defendant was negligent in not knowing that the labels were incorrect, we cannot say that it was harmless error for the court to instruct the jury that the evidence must be "clear and convincing." On the contrary, whether or not we "presume" that error to have been prejudicial, we conclude from our review of the record that this error by the trial court was prejudicial and we so hold.

We have not overlooked the contention by defendant that "the State of Oregon has no right to enter into the field of regulation of interstate commerce on issues of fabric labeling because of preemption by federal law." This argument is based upon the assumption that Congress preempted the field by the passage of the Wool Products Labeling Act of 1939, 15 USC §§ 68-68j.

■ According to defendant, this act demonstrates a pervasive scheme of regulation and that therefore, the states are preempted from taking action on the same subject. We cannot agree with this contention. Even assuming that the UTPA seeks to regulate the same subject as the Wool Products Labeling Act, defendant's contention is not persuasive.

In *Jones v. Rath Packing Co.,* 430 US 519, 97 S Ct 1305, 51 LEd 2d 604 (1977), the U.S. Supreme Court stated (at 525) that:

> "We start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

And, at 526:

> "The criterion for determining whether state and federal laws are so inconsistent that the state law must give way is firmly established in our decisions. *Our task is 'to determine whether, under the circumstances of this particular case, [the State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' "* (Emphasis added)

No such obstacle is presented in this case. As also stated by this court in *Derenco v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 543, 577 P2d 477 (1978):

> "In recent cases, however, the court has limited application of this approach to preemption [pervasive or comprehensive scheme of federal regulation] by narrowly defining the field regulated by Congress."

Defendant also contends that federal law (15 USC § 68c) prohibits it from removing the manufacturer's label. We note, however, that that federal statute only penalizes removal if done "with intent to violate the provisions of sections 68 to 68j of this title * * *." In addition, section 68b(c) of the same act specifically allows any person to replace a label with a substitute if he "finds or has reasonable cause to believe" that the label is incorrect.

Reversed and remanded.

**HOWELL, J.,** specially concurring.

I concur in all aspects of Justice Tongue's opinion except that I do not approve of the references

in the opinion to error being "deemed" or "presumed" to be prejudicial. As I stated in my brief dissent in *Elam v. Soares,* 282 Or 93, 577 P2d 1336 (1978), our function as an appellate court should be to decide whether the error was prejudicial, without any presumption as to whether it was prejudicial or harmless. In the instant case, to instruct the jury that the evidence must be clear and convincing rather than a preponderance was error requiring a reversal, and any references to evidence being "deemed" or "presumed" prejudicial is unnecessary.