Argued and submitted May 14, reversed and remanded in part; affirmed in part October 22, 2003

Barry ADAMSON,
*Appellant,*

*v.*

WORLDCOM COMMUNICATIONS, INC.,
fka MCI WorldCom Communications, Inc.,
MCI WorldCom Communications, Inc.,
*Inactive Respondents,*

*and*

QWEST CORPORATION,
individually and as successor in interest to U S West, Inc.,
and American Telephone & Telegraph,
*Respondents.*

CCV 0011618; A114804

78 P3d 577

Barry Adamson argued the cause and filed the briefs *pro se*.

Paul C. Galm argued the cause for respondent Qwest Corporation. With him on the brief were Lawrence Reichman and Perkins Coie LLP.

Darleen Ortega argued the cause for respondent American Telephone & Telegraph. With her on the brief were Traci Kirkpatrick and Davis Wright Tremaine LLP.

Eric R. Todderud, Natalie L. Hocken, and Heller Ehrman White & McAuliffe, LLP, filed the brief for Inactive Respondents WorldCom Communications, Inc., and MCI WorldCom Communications, Inc.

Before Landau, Presiding Judge, and Wollheim and Brewer, Judges.

LANDAU, P. J.

.

## LANDAU, P. J.

Plaintiff Barry Adamson initiated this action against several telecommunications service providers for claims arising out of certain of their billing and termination of service practices. Named as defendants were WorldCom Communications, Inc., fka MCI WorldCom Communications, Inc. (MCI), Qwest Corporation (Qwest), and American Telephone & Telegraph (AT&T). The trial court entered a judgment dismissing all claims for failure to state a claim. Plaintiff appeals. During the pendency of the appeal, MCI notified this court that it had filed for bankruptcy protection. The portion of the appeal pertaining to MCI was ordered held in abeyance, while the balance of the appeal pertaining to Qwest and AT&T was permitted to proceed. As to those defendants, we affirm in part and reverse in part.

## I. FACTUAL BACKGROUND

In reviewing the legal sufficiency of the allegations of the complaint, we consider only those facts alleged and accept as true all well-pleaded allegations, giving plaintiff the benefit of all favorable inferences that reasonably may be drawn from those allegations. *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999); *Durham v. City of Portland*, 181 Or App 409, 414, 45 P3d 988 (2002).

AT&T and MCI provide long-distance telecommunications services. Qwest is a telecommunications utility providing local telecommunications and exchange services. Before February 3, 1999, plaintiff received long-distance telecommunications service from MCI. On February 3, 1999, plaintiff decided to switch his long-distance service to AT&T, and AT&T agreed to provide him with "One Rate" service at $13 per month. AT&T assured plaintiff that it would notify MCI of the switch in long-distance service providers.

MCI responded to the switch by twice calling plaintiff to solicit his return to MCI. Plaintiff declined. On February 24, 1999, MCI sent a statement for "current" charges, and, approximately two weeks later, plaintiff paid the full amount. Meanwhile, beginning with a statement dated February 19, 1999, Qwest—plaintiff's local residential service provider—began including in its monthly statements

charges for long-distance service that AT&T had begun to provide him earlier that month. Plaintiff has paid all such charges by Qwest for the long-distance service that AT&T has provided.

Undeterred by plaintiff's switch to AT&T, however, MCI continued to bill plaintiff for long-distance service that it knew it no longer provided. MCI even assessed late fees when plaintiff did not continue to make payments for service that it no longer provided.

On November 24, 1999, plaintiff attempted to place a long-distance call but was unable to complete the call. Plaintiff complained to AT&T, but he was told that the inability to place long-distance calls originated with Qwest. He complained to Qwest, which, on December 10, 1999, told him that it had terminated his long-distance service with AT&T as of September 10, 1999, on instructions from MCI because of his failure to pay MCI for the charges that it had continued to impose notwithstanding his switch to AT&T. In the meantime, although it had terminated his AT&T long-distance service, Qwest had continued to include in its monthly statements charges for AT&T long-distance service.

On November 24, 2000, plaintiff brought this action against MCI, Qwest, and AT&T. Against MCI, he asserted claims of unlawful trade practices, unlawful telecommunications practices, unlawful debt collection practices, and interference with contract. Against Qwest, he asserted a single claim for unlawful trade practices. And, against AT&T, he alleged a single claim for unlawful trade practices.

MCI and AT&T moved to dismiss pursuant to ORCP 21 A(8), asserting that plaintiff had failed to state a claim. They argued that plaintiff's claims against them are barred by the "filed-rate doctrine" because the relief that he seeks is at odds with the relief permissible under tariffs approved by the Federal Communications Commission (FCC) and the Oregon Public Utility Commission (PUC). In the alternative, they argued that the unlawful trade practices and unlawful debt collection practices claims were time-barred. Qwest also moved to dismiss. It, too, invoked the filed-rate doctrine, arguing that the relief that plaintiff seeks is inconsistent with what is permitted under tariffs approved by the PUC.

The trial court granted defendants' motions, concluding that "[p]laintiff's right to bring an action against the defendants is limited by the applicable tariffs."

## II. DISPOSITION OF THE MERITS

On appeal, plaintiff contends that the trial court erred in dismissing the claims against Qwest and AT&T. In particular, he contends that the court erred in accepting the applicability of the filed-rate doctrine. In response, Qwest and AT&T assert that the filed-rate doctrine supports the dismissal of the claims against them. They also argue that the trial court's decision is supported by alternate grounds. We address the parties' arguments in the context of the specific claims against each defendant.

### A. *Claim against Qwest*

We begin with the unlawful trade practices claim asserted against Qwest. Plaintiff alleged that Qwest willfully committed an unlawful trade practice in violation of ORS 646.608(1)(e), which prohibits representing that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have." According to plaintiff, Qwest committed such a practice when it represented in its monthly billing statements after September 10, 1999, that he had been provided with residential long-distance service from AT&T when Qwest knew that it had terminated his long-distance service on September 10, 1999.

Qwest argues that the trial court properly dismissed the claim because of the applicability of the filed-rate doctrine. In the alternative, it argues that the claim was properly dismissed because of the application of the doctrine of primary jurisdiction, because the complaint fails to state the elements of a violation of the statute, and because it is time-barred. We address each of those arguments in turn.

### 1. *Filed-rate doctrine*

■ Qwest first contends that the trial court correctly dismissed the unlawful trade practices claim against it because of the applicability of the filed-rate doctrine. According to Qwest, that doctrine prohibits the assertion of any claim that

has the effect of challenging the terms and conditions of service that have been established by tariffs approved by the FCC and the PUC. In this case, Qwest argues, plaintiff's claim runs afoul of PUC Oregon No 29, Exchange and Network Services, § 2.4.1, which provides, in part:

"The Company shall not be liable for any incidental or consequential damages, including but not limited to loss, damage, or expense directly or indirectly arising out of the services covered in the tariffs filed with the Oregon Public Utility Commission, unless such damages are a result of Company's willful misconduct."

Qwest contends that the limitation of liability that is described in the tariff covers the very type of damages that plaintiff is attempting to recover under his complaint and so the unlawful trade practices claim is barred.

Plaintiff begins by noting that the tariffs are not mentioned in his complaint and are not in the record of this case and, as a result, are not properly before us. In any event, he argues, the filed-rate doctrine is inapplicable, because there is no demonstrated basis for Qwest's contention that his claims arise out of its performance under its tariff and because, in any event, the tariff does not apply to willful misconduct. Plaintiff notes that his complaint specifically alleged that Qwest engaged in willful violations of the law.

Qwest replies that cognizance of the tariff may be taken by judicial notice and that plaintiff's claim clearly challenges the tariff itself because it includes a demand for damages that are specifically covered by the PUC tariff. Moreover, Qwest argues, plaintiff's allegations of willful misconduct are inadequate to trigger the exception in the tariff because those allegations are mere conclusions.

Qwest's reliance on the filed-rate doctrine at this stage and on this record is problematic. To begin with, the appropriateness of relying on a tariff that is not part of the complaint as a basis for a motion filed under ORCP 21 A(8) is at least debatable. In assessing a motion to dismiss for failure to state a claim, the only relevant document is plaintiff's complaint, and the only relevant issue is its legal sufficiency. *See, e.g., Thompson v. Telephone & Data Systems, Inc.*, 130 Or App 302, 881 P2d 819, *modified on recons*, 132 Or App 103,

105-06, 888 P2d 16 (1994) (agreements that are not part of the pleadings will not be considered in addressing motion for judgment on the pleadings).

■■ It is possible, as Qwest suggests, that we could take judicial notice of a tariff. To do so, however, we would need to conclude that tariffs, in effect, are laws—presumably laws that are "[p]ublic and private official acts of the * * * executive * * * department" under OEC 202(2). Even assuming that we may take judicial notice of tariffs generally, however, and even further assuming that the filed-rate doctrine might otherwise apply, Qwest's reliance on PUC Oregon No 29, Exchange and Network Services, § 2.4.1, is unavailing in this case. The filed-rate doctrine bars only an action that seeks to vary the terms of an applicable tariff. *See, e.g., AT&T v. Central Office Telephone*, 524 US 214, 222-23, 118 S Ct 1956, 141 L Ed 2d 222 (1998) ("The rights as defined in the tariff cannot be varied or enlarged by either contract or tort of the carrier."). Thus, the effect of a tariff on a particular claim depends on the nature of the claim and the specific terms of the tariff. If the claim is one that implicates the provisions of a tariff, then the tariff controls according to its terms, which may either limit relief available or bar a claim entirely. But if the claim is unrelated to the tariff, then the claim is not limited or barred. In other words, merely because a tariff exists does not necessarily mean that a claim is barred. *See, e.g., Olson v. Pac. N.W. Bell*, 65 Or App 422, 426, 671 P2d 1185 (1983) ("Assuming, *arguendo*, that the extent of defendant's liability may be limited reasonably by tariffs or regulations, we do not agree that this tariff insulates defendant from *all* liability under other theories." (Emphasis in original.)).

In this case, the tariff on which Qwest relies provides that its limitation of liability is conditional: "unless such damages are a result of Company's willful misconduct." Plaintiff alleged that Qwest willfully engaged in an unlawful trade practice. By the terms of the tariff, therefore, the claim is not barred.

■ As we have noted, Qwest acknowledges the allegation but it insists that it is insufficient. According to Qwest, in actions in which willfulness is an element, Oregon courts require more than a conclusory allegation. Qwest correctly

characterizes the general rule that, at least when willfulness is an element of a claim, a bare allegation that a defendant acted willfully is "a mere conclusion of the pleader." *Holden v. Pioneer Broadcasting Co., et al.*, 228 Or 405, 418, 365 P2d 845 (1961). But, even assuming for the sake of argument that the rule applies to the construction of a complaint, in this case plaintiff did not merely allege that Qwest willfully engaged in an unlawful trade practice. He further alleged that Qwest did so when it represented that AT&T was providing him with long-distance service *when it knew that it had terminated that service*. That is more than a conclusory allegation and is sufficient for the purpose of surviving a motion to dismiss pursuant to ORCP 21 A(8). *See, e.g.*, ORS 646.605(10); *State ex rel Redden v. Discount Fabrics*, 289 Or 375, 385, 615 P2d 1034 (1980) (as used in Unlawful Trade Practices Act, "willful" means that the defendant knew or should have known that the representation was not true). We therefore conclude that the trial court erred in dismissing the claim against Qwest based on the filed-rate doctrine.

### 2. *Primary jurisdiction*

■ Qwest argues that, if the trial court erred in dismissing the claim based on the filed-rate doctrine, dismissal nonetheless was appropriate under the doctrine of primary jurisdiction. According to Qwest, under that doctrine the appropriate forum for resolution of plaintiff's dispute is the PUC because of that agency's special expertise in the regulation of telecommunications service providers.

■■ Primary jurisdiction is a doctrine by which courts determine whether and when to defer exercising jurisdiction to permit an administrative agency to first decide a question presented. *Boise Cascade Corp. v. Board of Forestry (S42159)*, 325 Or 185, 191-93, 935 P2d 411 (1997). The doctrine does not involve the question whether the court has jurisdiction. *Holman Transfer Co. v. PNB Telephone Co.*, 287 Or 387, 400 n 7, 599 P2d 1115 (1979). Rather, it addresses whether it is preferable, in light of concerns for the efficient administration of justice, for the court to exercise its jurisdiction or to permit the agency charged with the administration of the laws initially to consider the dispute. *See, e.g., Panpat*

*v. Owens-Brockway Glass Container*, 334 Or 342, 347, 49 P3d 773 (2002).

■ ■ There are two types of primary jurisdiction. First, "statutory" primary jurisdiction exists when a statute specifically requires courts to apply the primary jurisdiction doctrine to a class of disputes. Second, judicially created primary jurisdiction exists when, in the absence of a statute, a court determines that the administrative agency initially should decide a given matter. *Boise Cascade Corp.*, 325 Or at 191-92. In this case, the parties have cited no statute requiring us to defer to an administrative agency, and we are aware of none. The question, therefore, is whether judicially created primary jurisdiction applies.

The Supreme Court has identified three factors that should be considered in determining whether an agency, rather than a court, is the preferable forum for initially determining the outcome of a dispute or an issue raised in a dispute:

> " '(1) the extent to which the agency's specialized expertise makes it a preferable forum for resolving the issue, (2) the need for uniform resolution of the issue, and (3) the potential that judicial resolution of the issue will have an adverse impact on the agency's performance of its regulatory responsibilities.' "

*Boise Cascade Corp.*, 325 Or at 192 (quoting Kenneth Culp Davis, *Administrative Law Text* § 14.1, 272 (3d ed 1972)).

In this case, plaintiff's complaint alleged a violation of the state unlawful trade practices statute. That claim pertains to state law and is of the sort that is regularly disposed of by state courts. It is true that it is possible that state tariffs may limit Qwest's liability with respect to that claim. That possibility, however, is not an uncommon one for state courts to face. *See, e.g., Simpson v. Phone Directories*, 82 Or App 582, 586, 729 P2d 578 (1986), *rev den*, 303 Or 172 (tariffs limited telephone company liability in common-law breach of contract action). In that light, we see no basis for concluding that judicial involvement will have an adverse impact on uniformity in the law or on the PUC's performance of its regulatory functions. We conclude that the doctrine of primary jurisdiction does not require dismissal of plaintiff's claim.

### 3. *Failure to state the elements of a claim*

Qwest also argues that the complaint is deficient because it fails to allege all of the elements of an unlawful trade practices claim. According to Qwest, the complaint is deficient in at least two respects, namely, that it fails to allege that Qwest acted willfully and that it fails to allege an ascertainable loss.

We begin with the element of willfulness. To state an unlawful trade practices claim, plaintiff must plead that the alleged misrepresentation was "willful." *Rathgeber v. James Hemenway, Inc.*, 335 Or 404, 413, 69 P3d 710 (2003). A "willful" violation occurs "when the person committing the violation knew or should have known that the conduct was a violation." ORS 646.605(1). The statute's wording suggests that the person who committed the willful violation must know that his or her conduct is a violation of the law. In *State ex rel Redden*, however, the Supreme Court held that the statute requires "no more than proof of ordinary negligence by a defendant in not knowing, when it should have known, that a representation made by him was not true." 289 Or at 385. Thus, it suffices that the defendant knew of the falsity of a representation, without knowing that the representation violated the law.

In this case, as we already have noted, plaintiff alleged that Qwest represented to him that he was receiving long-distance service from AT&T when it knew that such service already had been terminated. That allegation suffices.

We turn to the element of an ascertainable loss. ORS 646.638 provides that, to state a claim for an unlawful trade practice, plaintiff must allege that he suffered an "ascertainable loss of money or property, real or personal, as a result of" an unlawful trade practice. Qwest argues that, in this case, plaintiff's complaint is deficient because it is clear from the face of the complaint that he suffered no ascertainable loss as a result of its conduct. According to Qwest, the complaint alleges that plaintiff's long-distance service was cut off on September 10, 1999, and was not restored until he complained, on November 24, 1999. Because plaintiff did not complain until November 24, 1999, Qwest reasons, it must be

inferred that he made no long-distance calls during that time and was therefore not harmed. Qwest ignores the fact that, during that time, plaintiff paid for service that, in fact, he did not receive. We reject Qwest's argument without further discussion.

### 4. *Statute of limitations*

■ Qwest alternatively asserts that the dismissal still was proper because plaintiff's claim was time barred. ORS 646.638(6) provides that "[a]ctions brought [under the statute] shall be commenced within one year from the discovery of the unlawful method, act or practice." In this case, the complaint alleges that plaintiff discovered the fact that his long-distance service had been cut off on November 24, 1999, which was precisely one year before the date the complaint was filed. Qwest argues that, because MCI was continuing to send him bills for service he was not receiving, he should have been alerted to potential problems with his long-distance service. The fact that MCI continued to send plaintiff bills, however, does not necessarily mean that his long-distance service with a different company, AT&T, was in jeopardy. Moreover, our review is limited to whether the complaint on its face demonstrates that the action was untimely. *Allen v. Lawrence*, 137 Or App 181, 186, 903 P2d 919 (1995), *rev den*, 322 Or 644 (1996). Plaintiff's complaint in this case demonstrates that it was filed within one year of his discovery of the termination of his service. We reject Qwest's argument that the claim was properly dismissed because it was time-barred.

### B. *Claim against AT&T*

■ We next address the trial court's dismissal of plaintiff's unlawful trade practices claim against AT&T. Plaintiff alleged that AT&T willfully committed an unlawful trade practice when it represented to him in its statements that he was continuing to receive long-distance service when in fact those services had been terminated. AT&T argues that the claim was properly dismissed based on the filed-rate doctrine and that, in any event, it was properly dismissed because plaintiff failed to allege that its conduct was willful.

We need not address whether the trial court properly dismissed the claim based on the filed-rate doctrine because we agree with AT&T that dismissal was proper in light of plaintiff's failure to allege adequately the element of willfulness. As we have noted, to survive a motion to dismiss an unlawful trade practices claim, a plaintiff must allege that the defendant acted willfully, meaning that—at the least—the defendant knew or should have known of the falsity of its representation. *State ex rel Redden*, 289 Or at 385. In this case, although plaintiff alleged the bare conclusion that AT&T acted willfully, he did not allege that it knew or should have known that its representations as to the provision of long-distance service were false. The trial court therefore properly dismissed the claim against AT&T.

Judgment dismissing unlawful trade practices claim against Qwest reversed and remanded; judgment dismissing unlawful trade practices claim against AT&T affirmed.